Ordinary v. Barcalow.

## THE ORDINARY v. FARRINGTON BARCALOW AND JOHN H. WHITENACK.

1. A failure to settle a final account in the Orphans Court, is a breach of the bond of an executor, given by force of the fifth section of the supplement of 1855 to the Orphans Court act.
2. The non-payment of a legacy cannot be assigned as a breach of such bond, without showing a settlement of the executor's accounts in the Orphans Court, and a balance in his hands after the payment of debts.
3. Unless the decedent dies intestate there can be no decree for distribution.
4. The damages on the bond of an executor cannot be assessed at law; the money recovered must be distributed by the Ordinary.

This was an action of debt on a bond given by Farrington Barcalow, as executor of William Barcalow, and John H. Whitenack, as his surety.

The testator died in 1837, and in 1847 the executor filed his account, which was excepted to by one of the children of deceased, but nothing was further done with this account.

In 1863 the executor became bankrupt, and on the 16th of July, 1864, the executor, on the application of the widow of the intestate, was compelled to give the bond in suit, by force of placitum fifty-three of the Orphans Court act. *Nix. Dig.* 651.*

In the declaration the condition of the bond was set out,

* *Rev., p.* 778, ? 117.

and in assigning a breach, it was averred that the executor "had, in his hands and possession, $2000, belonging to the estate of the said William Barcalow, deceased, and which from thence hitherto hath so remained in his hands as such executor, and of which sum of $2000, the yearly interest thereof, was, by the last will and testament of William Barcalow, deceased, bequeathed and directed to be paid to one Ann Barcalow, widow of the said William Barcalow, deceased, during the time that she should remain such widow. That the said Ann Barcalow, was on, &c., the widow of said William Barcalow, deceased, and from thence, &c., and now is and hath been since, &c., entitled to have and receive the yearly interest, income and profits, of the investment of the said $2000."

The breach assigned is, that this interest money has not been paid, and that the executor has converted it to his own use.

The first plea is *non est factum,* and the second and third pleas, general performance.

The matter came before the court on a case stated.

Argued at November Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, WOODHULL and SCUDDER.

For plaintiff, *H. M. Gaston.*

For defendant, *J. D. Bartine* and *I. N. Dilts.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The parties have agreed, in this case, upon certain facts, and from the way in which the legal points are presented, in the written briefs of counsel, it would seem that it was the expectation that the opinion of the court should be expressed on the case thus made, without regard to the pleadings.

Looking at the matter in this view, it appears to be plain that the plaintiff is entitled to judgment. It is an admitted fact in the case, that the executor has failed to settle any final

account in the Orphans Court. Indeed, it is expressly stated that no account has ever been settled by him. I do not see how it is to be doubted, that this is a breach of the bond sued on. It has been entirely settled, by a series of decisions in this court, that the failure to render an account, in due form of law, is a breach of an administrator's bond, and may be assigned as such, in an action by the Ordinary. *Dickerson* v. *Robinson et al.,* 1 *Halst.* 195; *Ordinary* v. *Hart,* 5 *Halst.* 64.

It is true that it is one of the special conditions of the bond of an administrator, that he will make a "just and true account of his administration" within a specified time; but this is no ground for discrimination, because the same duty is incumbent on the executor by force of the statute, and the condition of the bond in suit is, "that he shall truly and faithfully perform his duty as such executor, and the trust in him reposed." This stipulation bound him to settle his account according to law, in the Orphans Court, and the non-performance of such stipulation was a clear breach of the bond.

Although this is the result of the facts as stated, such result is entirely aside from the issue raised on the pleadings. The breach of the bond, as it stands assigned on the record is, that the executor has failed to pay the widow her annuity. To this assignment of a breach, the defendant replies by an averment of general performance, which is not a proper course of pleading, as it raises an issue only by indirection. But the fault is one of form merely, and has not been excepted to, the question may, therefore, be considered with propriety, whether a failure to pay the widow her annuity can be set up as an infringement of the condition of this bond.

I have failed to see how an allegation of an omission, or neglect to pay a legacy, will show, with sufficient certainty, a forfeiture of this bond. The simple facts that an executor has moneys in his hands, and that he refuses to pay a legatee the amount of his bequest, do not constitute, *prima facie,* a breach of duty. The creditors are to be paid before the

legatees, and the consequence is, that to show a default on the part of the executor, with respect to the claims of the latter, it must be made to appear that all just demands against the estate have been satisfied. The executor is put in the wrong only by proof of a settlement with creditors, and a residue of assets which he neglects or refuses to apply, according to the directions of the will.

Nor can the question whether creditors have been paid, be tried in a suit on the bond to the Ordinary ; and in this respect such suit differs from one against the executor alone. The sum of money secured by the bond, is a fund in which all the creditors are interested, and consequently a legatee cannot found his right to a portion of this common fund on proof of the satisfaction of the debts due to creditors in a suit to which they are not parties. Creditors have the primary right in the fund, and it, on this account, would be unjust, and contrary to fundamental rules, to dispose of any portion of such fund in their absence. The consequence is, that the question whether the legal demands against the estate have been liquidated, and whether anything remains to be distributed under the will, must be settled in the Orphans Court, in a proceeding in which all persons having an interest may be heard. Indeed it would often be impossible to determine such an inquiry in a procedure such as the present suit. If we suppose no account to have been rendered in the Orphans Court, or no rule to limit the time within which the claims of creditors were to be presented to have been taken, it would seem quite impracticable, in a suit on the bond to the Ordinary, to ascertain in any satisfactory mode, whether or not any part of the money secured by that instrument should be assigned to the payment of legacies. On the trial at law, in which the creditors cannot participate, how can the debts due to such creditors be fairly investigated. It is manifest that in such a proceeding, a legatee would often be enabled to present a probable case, showing seemingly the satisfaction of the debts due from the estate, but it would be unjust and contrary to the spirit of the statutes relating to the subject, to permit him

to appropriate any part of these moneys which are not designed for his exclusive use on such an *ex parte* hearing. When the suit for the legacy is not upon the bond, but is brought by the legatee against the executor solely, the creditors have no interest, and on a plea of *plene administravit,* the condition of the estate may properly enough be inquired into, for in such suit, the executor being singly concerned, the burthen would be upon him to show a proper administration of the assets. But where the bond is prosecuted, and a legatee is seeking to take to himself part of the moneys secured by it, in derogation of the rights of creditors, the issue whether there is a surplus after the payment of debts, affects others besides the parties to the suit. The creditors, I think, have a right to insist that the bond, which is their security, shall not be put in suit by a party who cannot show in any legal mode that he has any interest in it, or has suffered anything by reason of its breach. The remedy of the legatee is simple, easy, and effectual. All he has to do is to compel the executor to an adjustment of the affairs of the estate before the proper tribunal, and after the balance has been struck, if a surplus remains, and his claim is not paid, to resort to a suit on the bond. With a proceeding so ready to his hand, I do not think he should have a license to call upon a court of law to attempt to investigate and adjudge as to the condition of an unsettled estate, with respect to assets. The inconvenience of such a course is enough to condemn it. Besides, it would be sometimes nugatory, as for example, where a surplus of assets should be made to appear in the action at law, and on the subsequent settlement of the accounts in the Orphans Court, under the order of the Ordinary, in the mode hereinafter mentioned, a deficit of assets should be shown. In such event, the latter finding would prevail, and would evince the judgment in the suit at law to have proceeded on a false ground. In all cases of unsettled administrations, there must be a reckoning before the Orphans Court, before the moneys secured by the bond can be dispensed, and it seems therefore naturally to follow, that a party should not have it

in his power to enforce a double settlement, the one in the common law court, in order to show a non-performance of the conditions of the bond, and the other in the Orphans Court, for the purpose of a distribution of the sum recovered. For these reasons, I think that where a legatee sues, as in the present instance, he is bound to show, when he relies for a breach on a failure to pay the money due to himself, that on a settlement in the Orphans Court, a surplus of assets was exhibited. When an executor has failed to have his final account settled, that fact, as has been already observed, is sufficient to constitute a breach.

The principle which forbids the legatee from alleging, as a breach of the present bond, the existence of assets, and the non-payment of his legacy, is similar to that which prevents one of the next of kin of an intestate from relying on similar averments with respect to his distributive share. In both cases, there are other facts necessary to constitute a breach of duty in the personal representative. In the one case, the executor is not liable to the legatee, unless it has been decreed that there is a surplus in his hands after the payment of debts ; in the other, the administrator's liability depends on the existence of a decree for distribution. That non-payment of a distributive share in the absence of a judicial order directing it, will not operate as a breach of an administrator's bond, is settled by the decision in the case of *The Ordinary* v. *Smith's Executors, 3 Green* 92.

I observe, in the brief of counsel, it is insisted that a legatee cannot sue on the bond, until there has been a decree of the Orphans Court for distribution. But this is clearly untenable ; as in case of an executorship, there can be no such decree. The will itself directs how the surplus, after a settlement of the debts, is to be disposed of, and the Orphans Court has no capacity to construe, for this purpose, such instruments. A decree of that character might mislead the executor or other persons, but it could have no legal effect.

The second question raised in the case is, whether the ·

damages, sustained by the legatee, can be assessed at law in the present suit.

This does not seem to be an open question. By the express provision of the thirteenth section of the act which authorizes the bond to be taken of the executor, it is directed that the moneys recovered " shall be applied towards making good the damages sustained by the non-performing the conditions thereof, in such manner as the Ordinary shall, by his sentence or decree, direct." *Nix. Dig.* 652.* It thus appears, that these bonds are put upon the same footing with respect to the mode of the distribution of the moneys secured by them with bonds given by administrators. There are several cases which decide most conclusively, that in suits on bonds of the last named kind, there can be no assessment of damages at law. The leading case is that of *The Ordinary* v. *Hart,* 5 *Halst.* 65. The course prescribed in these authorities is, when a breach has been shown, to take judgment for the penalty. The Ordinary will control this judgment, and dispense the money to the parties entitled to it, in the order and in the measure prescribed by law.

The plaintiff is entitled to judgment, on the ground that the executor has not settled his accounts in the Orphans Court. The pleadings can be remodeled, so as to raise up the proper issue.